In the Matter of Jeffrey
MARTIN, Debtor.

HOMEWAY RENTALS, Movant,

v.

Jeffrey MARTIN, Respondent.

Bankruptcy No. 183–00568.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

March 15, 1984.

James D. Walker, Jr., Augusta, Ga., for movant.

Lee Ringler, Augusta, Ga., for debtor.

HERMAN W. COOLIDGE, Bankruptcy Judge.

Homeway Rentals, a creditor in this Chapter 13 proceeding, sought relief from the automatic stay imposed by § 362 of the Bankruptcy Code. The following facts are established.

## FINDINGS OF FACT

Homeway Rentals entered into a contract with this Debtor and his wife on June 23, 1983, which placed a nine foot freezer in the Debtor's home for his use. The contract called for payments of $10.00 per week. It is undisputed that there was also an oral agreement between the parties that Debtor and his wife could acquire title to the freezer by making seventy-eight weekly rental payments. The written contract provided that title remains at all times in Homeway Rentals. It also reserved to the Debtor and his wife the option to terminate the contract at any time by return of the freezer to Homeway Rentals together with all rental payments due through the date of return. The Debtor assumed this executory contract under his Chapter 13 plan, but has failed to make the weekly payments under the contract and is continuing to fail to make payments under the contract.

Homeway Rentals contends that the Debtor has no title to the property and by his failure to make payments under the contract it has expired by its terms. Debtor's attorney contends that the contract in question is a disguised security transaction and that default under the same did not render the consumer ineligible to become

the owner of the freezer under his Chapter 13 plan. The question, therefore, which this Court must answer is whether this transaction is a credit sale or a lease.

## CONCLUSIONS OF LAW

It is obvious from the contract that the Debtor was obligated to make each weekly payment in advance. It is equally obvious that he had the right to terminate the contract by surrendering the freezer and paying in full his obligation under the contract to the date of surrender. This terminability right conferred upon and accepted by the Debtor is crucial to the decision reached by this Court.

The terminability of a lease agreement was relied upon by the court in the case of *In re Marhoefer Packing Co., Inc.* 674 F.2d 1139 (7th Cir.1982). In the *Marhoefer* case, the lessee had agreed to lease certain equipment for a four year term with the option to renew the lease for a second four year term, and with the additional option of purchasing the goods for $1.00 at the end of the second term. The Court noted that the lessee "was given a right to terminate the agreement after the first four years and cease making payments without that option ever becoming operative". *Id.* at 1142. Likewise, the Homeway Rentals agreement gave the lessee the option to terminate at any time with no further obligation. With regard to the purchase option afforded the lessee, the *Marhoefer* court noted, "an option of this type makes a lease one intended for security *only* when it necessarily arises upon compliance with the terms of the lease ... Because [the lessee] could have fully complied with the lease without that option ever arising, [the agreement was not a sale]". *Id.* at 1143. Similarly, the lessee under the Homeway Rentals agreement "fully complied" with the lease after making *one* weekly rental payment; any purchase option would only have arisen after the lessee had voluntarily elected to renew the lease 77 more times.

The significance of the lessee's right to terminate on the "lease v. security interest" issue was perhaps most strongly stated by Professor Peter F. Coogan, a leading commentator on the Uniform Commercial Code:

"... the pre-Code authorities are decidedly correct when they state that if the facts of the transaction include the presence of the usual right of a consignee to return consigned goods, or if the lease contains an option in the lessee to terminate, then there is no obligation to pay an amount substantially equal to the purchase price and thus no conditional sale under pre-Code law, as well as no security interest under the U.C.C." "Leases of Equipment and Other Unconventional Security Devices: An Analysis of U.C.C. § 1–201(37) and Article 9" 1973 Duke Law Journal 909, 916.

Debtor's attorney relies heavily on the Eighth Circuit Court of Appeals opinion in *Clark v. Rent-It Corporation*, 685 F.2d 245 (8th Cir.1982) which involves an interpretation of the Truth-in-Lending Act as it applies to questions similar to that now before the Court.

■ Notwithstanding the Eighth Circuit's holding in *Clark, supra,* it now seems fairly well settled that the Truth-in-Lending Act has no application to this type of terminable consumer lease or rent-to-own contract and this Court concludes that rental or lease agreements with an option to purchase which are terminable at will by the consumer are not "credit sales" within the meaning of the Truth-in-Lending Act, and are not subject to the disclosure requirements of the act or Regulation "Z", 12 C.F.R. § 226 (1980).

■ The Federal Reserve Board's treatment of these terminable consumer leases has been unwaivering in its consistency. The Board holds that these terminable consumer leases are not covered by the Truth-in-Lending Act. This fact has been made absolutely clear by the latest version of Regulation "Z", which came into effect on April 1, 1981, and became mandatory as of October 1, 1982. That Regulation now defines a credit sale as follows:

"(16) 'Credit Sale' means a sale in which the seller is a creditor. The term includes a bailment or lease (*unless terminable without penalty at any time by the consumer*) under which the consumer:

(i) agrees to pay a compensation for use, a sum substantially equivalent to or in excess of, the total value of the property and services involved; and

(ii) will become (or has the option to become), for no additional consideration, or for nominal consideration, the owner of the property upon compliance with the agreement."

12 C.F.R. § 226.2(16) (Emphasis added).

This Court concludes that the Debtor's right to terminate the agreement at any time by surrender of the property and payment through the date of surrender makes this contract a true lease and not a disguised secured transaction.

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the automatic stay imposed by § 362 of the Bankruptcy Code is hereby lifted as it relates to the nine foot freezer in question and Homeway Rentals is authorized to recover said property by appropriate action under state law.