In re George Brian HANLEY and Lynda Laureen Hanley, Debtors.

Barry M. BARASH, Chapter 7 Trustee for Lynda L. Hanley, et al., Plaintiffs,

v.

ROYCE, INC., d/b/a Royce Rentals, Defendant.

In re Richard Charles GROOM, Debtor.

Richard C. GROOM, Plaintiff,

v.

ROYCE, INC., d/b/a Royce Rentals, Defendant.

In re Charles LaVerne SPENCER and Georgianne Spencer, Debtors.

Charles LaVerne SPENCER and Georgianne Spencer, Plaintiffs,

v.

ROYCE, INC., d/b/a Royce Rentals and Dennis J. Cain, Defendants.

No. 90–1113.

United States District Court, C.D. Illinois.

Nov. 2, 1990.

Barry Barash, Galesburg, Ill., for Hanley, Groom, and Spencer.

Thomas L. Perkins, Peoria, Ill., for Royce, Inc., and Cain.

## ORDER

MIHM, Chief Judge.

This matter is before this Court on appeal from the United States Bankruptcy Court for the Central District of Illinois. Royce Rentals, an adversary defendant in the bankruptcy court, appeals the bankruptcy court's denial of its motion to dismiss the adversary complaints. 105 B.R. 458. For the reasons stated below, the bankruptcy court's denial is reversed.

## BACKGROUND

This appeal arises out of three adversary complaints filed in separate bankruptcy proceeding. Each adversary complaint names Royce, Inc., d/b/a Royce Rentals ("Royce") as a Defendant.

Royce does business in the rent-to-own industry. It leases, with options to purchase, consumer appliances under rental purchase agreements. Plaintiffs allege, in alternative counts, that the agreements violate either the Federal Consumer Leasing Act, 15 U.S.C. § 1667, *et seq.*, and the regulations promulgated thereunder (Regulation M), 12 C.F.R. Part 213, or the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the regulations promulgated thereunder (Regulation Z), 12 C.F.R. Part 226, by failing to make certain disclosure required by these statutes.

Royce filed separate motions to dismiss the adversary complaints which were consolidated for hearing by the bankruptcy court. Royce moved for dismissal on the basis that neither the FCLA nor the TILA apply to its agreements.

The bankruptcy court found that the FCLA does not apply to the agreements and dismissed those counts of the adversary complaints. As to the TILA counts, however, the bankruptcy court found that a question of fact existed as to whether the agreements were "credit sales" subject to the provisions of the TILA thereby precluding dismissal of the complaints prior to an evidentiary hearing. Upon Royce's motion, the bankruptcy court reconsidered its position and reaffirmed its denial of Royce's motions to dismiss the counts of the adversary complaints based upon the TILA. Royce moved for leave to appeal the bankruptcy court's denial of its motions and this Court granted leave to appeal.

The threshold question considered by the bankruptcy court is whether the agreements fall within the definition of "credit sale" found in the TILA at 15 U.S.C. § 1602(g) and in Regulation Z at § 226.-2(a)(16). There is no dispute that if the agreements are not "credit sales," they are not subject to the disclosure requirements of the TILA and Regulation Z.

The bankruptcy court held that the agreements might be "credit sales" if they were disguised sales (rather than true leases), or if Royce is a "creditor" as used in the definition of "credit sale." The court held that the answers to these questions could not be determined merely upon a review of the terms of the agreements alone. Rather, the court held, it is necessary to consider extrinsic evidence in the nature of (a) what the customers were told about whether the agreements were leases or sales, (b) what the customers believed about whether the agreements were leases

or sales, and (c) an inquiry into the frequency with which Royce's customers exercised their option to purchase the leased appliances in order to determine whether Royce was a "creditor" as used in the definition of "credit sale."

On appeal, Royce's contentions are as follows:

1. That the Regulation Z definition of "credit sale," as amended in 1981, exempts from coverage contracts in the form of a lease terminable without penalty at any time by the consumer;

2. That the Royce agreements are contracts in the form of a lease terminable without penalty at any time by the consumer and are therefore exempt from coverage of the TILA as a matter of law;

3. Alternatively, that even if the Regulation Z exemption is not conclusive, the Royce agreements do not fall within the scope of the definition of "credit sale" found in the TILA which does not include the Regulation Z language expressly exempting contracts in the form of a lease terminable without penalty at any time by the consumer;

4. That the parol evidence rule excludes consideration of extrinsic evidence in making the determination as to whether the Royce agreements fall within the definition of "credit sale;"

5. Alternatively, that the Royce agreements are true leases and not disguised sales since the agreements are terminable at will with no contractual obligation to pay an amount equal to or substantially equivalent to the purchase price of the leased goods.

## DISCUSSION

The rent-to-own agreements at issue here provide for an initial rental period of one or two weeks. Thereafter, the agreements provide the renter the option to renew the lease weekly or monthly. The renter exercises the renewal option by making an additional rental payment to Royce. Each agreement provides the renter with an option to acquire ownership of the property by making a certain number of rental payments to Royce ranging from 21.5 monthly payments to 91 weekly payments. The renter may also exercise an early purchase option by paying a variable sum based upon a formula specified in the agreement.

However, these agreements provide that the renters are not obligated to continue to rent the goods beyond the initial rental period. The renters have no obligation to purchase the goods, and each agreement provides the renters the right to terminate the rental relationship at any time by returning the goods to Royce. If the renters elect to terminate the agreements, they are obligated to Royce only for the amount of rent attributable to their actual possession of the goods.

Thus, the rent-to-own agreements at issue are terminable, without penalty [1], at any time by the renters. As such, they are specifically exempt from the definition of "credit sale" and thus are not subject to the disclosure requirements of the TILA. Section 226.2(a)(16) of Regulation Z defines "credit sale" as follows:

> "Credit Sale" means a sale in which the seller is a creditor. The term includes a bailment or lease (*unless terminable without penalty at any time by the consumer*) under which the consumer:
>
> (i) agrees to pay as compensation for use a sum substantially equivalent to, or in excess of, the total value of the property and services involved; and
>
> (ii) will become (or has the option to become), for no additional consideration or for a nominal consideration, the owner of the property upon compliance

---

1. Appellees argue that forfeiture of the rented property upon termination of the rental agreement constitutes a penalty. They claim that, once the renter has begun making sizable rental payments, he will not terminate the agreement because of the loss of all prior rental payments. This argument is unavailing. Although the renters may have an economic incentive to make the number of rental payments necessary to acquire ownership of the goods, the agreements provide them the right to terminate at any time. The contractual right to terminate precludes a finding that rent-to-own agreements are truly sales with a forfeiture of the property upon termination of payments.

with the agreement. (Emphasis added).

12 C.F.R. § 226.2(a)(16).

This Court must give deference to definition of "credit sale" in Regulation Z as promulgated by the Federal Reserve Board. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980); 15 U.S.C. § 1604. Unless they are "demonstrably irrational," such opinions by the Federal Reserve Board are to be dispositive of the issues they address and thus binding upon this Court. *Milhollin,* 444 U.S. at 565, 100 S.Ct. at 796. Indeed, for this Court to otherwise define "credit sale" contrary to the clear definition enunciated by the Federal Reserve Board would constitute improper judicial legislation. The Court finds that Regulation Z is not "demonstrably irrational."

Appellee's policy arguments concerning the scourge of the agreements in question, while not without moral merit, are addressed to the wrong branch of government. If the concept of "credit sale" is to be expanded so that the TILA disclosure requirements apply to the type of rent-to-own contracts at issue here, it must be the legislature, and not the courts, which make that determination.

## CONCLUSION

For these reasons, the bankruptcy court's denial of Royce's Motion to Dismiss is REVERSED, and that Motion to Dismiss is hereby GRANTED. This case is REMANDED to the bankruptcy court for further proceedings not inconsistent with this Order.