**In re Ozella JOHNSON, Debtor.**

**CENTRAL RENTS, INC., d/b/a Rentronics, Movant,**

v.

**Ozella JOHNSON, Respondent.**

**Bankruptcy No. 96–10634.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

Dec. 18, 1996.

J. Benjamin Kay, III, Augusta, GA, for Movant.

Lauminnia F. Nivens, and Co–Counsel Angela Carter McElroy, McElroy & Toole, Augusta, GA, for Debtor.

## *ORDER*

JOHN S. DALIS, Chief Judge.

Central Rents, Inc. d/b/a Rentronics ("Rentronics") objects to the confirmation of the Debtor's Chapter 13 plan, and moves to require the Debtor to assume or reject a Rentronics Lease–Purchase Agreement and for relief from the automatic stay, asserting a lack of adequate protection of its interest in the property. The Debtor in turn objects to Rentronics' Proof of Claim which asserts damages for the Debtor's alleged breach of its lease with Rentronics. This matter is a core proceeding within this court's jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) & (2)(A)(B)(G)(M) & (*O*) and 1334. Rentronics' motion to require assumption or rejection of the lease is granted.

On February 10, 1996, the Debtor executed a "Lease–Purchase Agreement With 3–Month Obligation" (hereinafter "Agreement") for a washing machine and dryer. The Agreement created an initial rental period of three months or thirteen weeks, after which period the Debtor was entitled to renew the Agreement on a week to week or month to month basis by paying either the weekly rent of $22.99 or the monthly rent of $79.99 prior to the expiration of the initial term. The Agreement specifically provided that:

1. after the initial period, the Debtor was entitled to purchase the items from Rentronics, or to renew the lease on a weekly or monthly basis for up to twenty-one consecutive months, at which time the Debtor would own the items;

2. the Debtor could cancel the lease without penalty at any time following the initial three month period;

3. Rentronics held title to the items until they were purchased by the Debtor;

4. Rentronics remained responsible for the maintenance and repair of the items; and

5. Rentronics maintained risk of loss on the items except in limited circumstances.

The Debtor made only six weekly payments before defaulting on March 23, 1996. On April 29, 1996, the Debtor filed the instant Chapter 13 case. The Debtor's Schedules listed Rentronics as a secured creditor holding an $876.00 secured claim, and listed the value of the items equaling the amount of this claim. The Debtor's Plan did not specifically provide repayment terms of Rentron-

ics' alleged secured claim [1], and the Debtor took no steps to either assume or reject Rentronics' lease. The Debtor has made no post-petition payments to Rentronics under the Agreement.

Rentronics asserts that the Agreement constitutes a lease which, under 11 U.S.C. § 365 [2], the Debtor must either assume, curing the arrearage and remaining current on its payments, or reject, returning the property to Rentronics. The Debtor asserts that the Agreement constitutes a security agreement and that she must only pay Rentronics the value of the collateral through the Chapter 13 plan. 11 U.S.C. § 1325(a)(5) [3]. Whether the Agreement is a lease or a security agreement is determined by Georgia law. *Rent City v. Hollis (In Re Hollis)*, No. 89–10179, slip op. at 4 (Bankr. S.D.Ga. Dec. 12, 1989) (Lease purchase agreement executed in Georgia by two Georgia residents is construed according to the laws of Georgia), *citing* H.R. rep. No. 595, 95th Cong., 1st Sess. 314, 1977 U.S.Code Cong. & Admin.News, 5787, 6271. Georgia

---

1. The Debtor's form plan provided that:
"Secure creditors shall retain liens securing their claims. Creditors *who file claims* and whose claims are allowed as secured claims shall be paid the lessor of (1) the amount of their claim, or (2) the value of their collateral as set forth here:" (emphasis in original)
The Debtor did not attempt to value Rentronics' collateral.

2. 11 U.S.C. § 365 provides in part:
(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
(C) provides adequate assurance of future performance under such contract or lease.

(d)(2) In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residen-

tial real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

3. 11 U.S.C. § 1325(a)(5) provides:
(a) Except as provided in subsection (b), the court shall confirm a plan if—

.    .    .    .    .

(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder;

.    .    .    .    .

has enacted legislation defining instances where consumer lease-purchase agreements are treated as true leases. Official Code of Georgia (O.C.G.A.) § 10–1–681 [4]. If the lease-purchase agreement fails to meet the requirements of this provision, the court's inquiry ends, and the arrangement is treated as a security agreement. *Id.* at 8. If, on the other hand, the Agreement satisfies § 10–1–681, the court will apply Georgia's adoption of the Uniform Commercial Code (U.C.C.) to determine whether the Agreement constitutes a true lease or a security agreement based upon all facts of the case. *Id.*

■ The instant Agreement satisfies the requirements of § 10–1–681(1). The Agreement covers personal property used by the Debtor for family or household purposes for an initial term less than four months, renewable with each payment after the initial period. Furthermore, the Agreement is not excepted from the definition of a Lease–Purchase Agreement under subparagraphs (A) through (E). The Debtor proposes only one subsection which gives her a colorable argument for excepting the Agreement from the definition of a true lease. The Debtor argues that the Agreement is excepted under subparagraph (A), as it constitutes a credit sale under the Truth–in–Lending Act and the implementing Regulation Z. Under Regulation Z, a lease constitutes a credit sale, unless the lease is terminable at will

without penalty by the consumer, if the debtor must pay a sum substantially equal to or greater than the fair market value of the collateral, and if the debtor becomes, or has the option to become, the owner of the collateral for no additional consideration or nominal consideration. 12 C.F.R. § 226.2(a)(16) [5].

Regulation Z fails to define "penalty," leaving the definition subject to state law or contract. 12 C.F.R. § 226.2(b)(3). The Debtor argues that the required three month initial period constitutes a "penalty," for terminating the contract, a result not intended under Regulation Z. *See, Barash v. Royce, Inc. (In re Hanley)*, 135 B.R. 311 (C.D.Ill. 1990) (Initial period requirement does not constitute a "penalty" within meaning of 12 C.F.R. § 226.2(a)(16).) Under the Debtor's analysis, a hypothetical renewable week to week lease which requires a debtor to pay one week's rent prior to taking possession would contain a "penalty" if, prior to the end of the first week, the debtor returned the collateral and demanded a per-diem refund of the week's rent payment. Furthermore, finding that the existence of a three month initial lease period excepts the Agreement from the definition of a Lease–Purchase Agreement contradicts paragraph 1 of O.C.G.A. § 10–1–681 which allows for an initial period of up to four months. Because the definition of "penalty" is left to state law,

---

**4.** O.C.G.A. § 10–1–681 provides:

As used in this article, the term:

(1) "Lease-purchase agreement" means an agreement for the use of personal property by a lessee primarily for personal, family, or household purposes, for an initial period of four months or less that is renewable with each payment after the initial period and that permits the lessee to become the owner of the property. Lease-purchase agreements shall not include any of the following:

(A) A lease or agreement which constitutes a credit sale as defined in 12 C.F.R. 226.2(a)(16) and Section 1602(g) of the Truth-in-Lending Act, 15 U.S.C. 1601 et seq.;

(B) A lease which constitutes a consumer lease as defined in 12 C.F.R. 213.2(a)(6);

(C) Any lease for agricultural, business, or commercial purposes;

(D) Any lease made to an organization; or

(E) A lease or agreement which constitutes a retail installment transaction as defined in paragraph (10) of subsection (a) of Code Section 10–1–2.

(2) "Lessee" means a person who leases property pursuant to a lease-purchase agreement.

(3) "Lessor" means a person who, in the ordinary course of business, regularly leases, offers to lease, or arranges for the leasing of property under a lease-purchase agreement.

(4) "Period" means a day, week, month, or other subdivision of a year.

**5.** 12 C.F.R. § 226.2(a)(16) provides:

(16) "Credit sale" means a sale in which the seller is a creditor. The term includes a bailment or lease (**unless terminable without penalty at any time by the consumer**) under which the consumer:

(i) Agrees to pay as compensation for use a sum substantially equivalent to, or in excess of, the total value of the property and services involved; and

(ii) Will become (or has the option to become), for no additional consideration or for nominal consideration, the owner of the property upon compliance with the agreement. (Emphasis added.)

I do not incorporate a definition in this statute (penalty) which renders meaningless another section of the same statute (initial term).

■ The Agreement also fails to meet the definition of a "Credit Sale" under subparagraphs (i) and (ii) of § 226.2(a)(16) under binding precedent interpreting these subsections. Because the Debtor may terminate the lease after the initial period, she is not obligated to pay the substantial equivalent of the total value of the property, nor does she have the option to become owner of the property at the end of the mandatory lease period for nominal or no additional consideration. *See, Smith v. ABC Rental Systems of New Orleans, Inc.*, 491 F.Supp. 127 (E.D.La. 1978) *aff'd* 618 F.2d 397 (5th Cir.1980). In *Smith*, the "renter" obtained a television from the defendant and executed a week to week rental agreement, obligating him to pay $16.00 a week for eighteen months, at which time he would become owner of the television. The renter had the right to terminate the agreement at any time after the initial weekly rental. The district court ruled that the renter was not obligated to make any payments beyond the first $16.00, and therefore was not required to pay as compensation for his use a sum substantially equivalent to or in excess of the value of the television, removing the lease from the definition of § 226.2(a)(16). *Id.* at 129. The Fifth Circuit Court of Appeals affirmed the decision of the District Court without opinion. 618 F.2d 397 (5th Cir.1980)[6]. An Alabama District Court analyzing an identical lease contract ruled that the agreement did not constitute a credit sale, finding the *Smith* decision binding, which holding was upheld by the Eleventh

Circuit Court of Appeals without a published opinion. *Givens v. Rent–A–Center, Inc.*, 720 F.Supp. 160, 162 (S.D.Ala.1988) *aff'd*, 885 F.2d 879 (11th Cir.1988).

In the instant case, the Debtor is required to pay a minimum of three monthly payments of $79.99, for a total of $239.97. After paying this amount, the Debtor owes nothing further unless she chooses to keep the property beyond the three month period. The initial purchase price for the washing machine and dryer is listed on the contract as $1009.12 and the Debtor's schedules valued the three-month old machines at $876.00. Clearly, the Debtor was not required to pay the equivalent value of the rented items, leaving this transaction beyond the definition of a credit sale. Furthermore, the Debtor could purchase the items at the end of the initial lease period only by paying the entire remaining amount due under the lease, totaling at least $1540.62 [$1780.59 (total cost of lease)—$239.97 (first three months) ].

■ Because the Agreement meets the threshold inquiry under § 10–1–681, the next question is whether the Agreement constitutes a lease or a security agreement under Georgia's Commercial Code. The U.C.C. defines a lease as ". . . a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval or a sale or return, or retention or creation of a security interest is not a lease." O.C.G.A. § 11–2A–103(j). The U.C.C. provides guidelines to determine whether a financing arrangement is a true lease or a security agreement. O.C.G.A. § 11–1–201(37)[7].

---

**6.** Decisions of the Fifth Circuit rendered on or before September 30, 1981 remain binding precedent upon the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981).

**7.** O.C.G.A. § 11–1–201(37) provides:
"Security Interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest", but a consignment is in any event subject to the provisions on consignment sales (§ 6A–2–326).
(1) Whether a transaction creates a lease or security interest is determined by the facts of

each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and
(a) The original term of the lease is equal to or greater than the remaining economic life of the goods;
(b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become owner of the goods;
(c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nomi-

Courts analyzing agreements substantially similar to the instant Agreement have found them to constitute leases based upon the following factors:

1. the lease is terminable at will by the lessee;

2. the lessor retains the risk of loss on the collateral;

3. the duty to repair is on the lessor;

4. the mandatory payments due under the lease are not equal to or greater than the value of the items rented; and

5. the lessee is not compelled to purchase the rented items at the termination of the lease.

*See, Homeway Rentals v. Martin (In re Martin)*, 64 B.R. 1 (Bankr.S.D.Ga.1984); *Shamrock Rental Co. v. Huffman (In re Huffman)*, 63 B.R. 737 (Bankr.N.D.Ga.1986).

The Debtor argues that the initial mandatory three month rental period in the instant Agreement distinguishes this lease from the cases cited, asserting that this provision effectively eliminates the Debtor's right to terminate the lease. This initial period of three months is insufficient to distinguish this Agreement from the leases considered in the above-cited cases because the Debtor retains the right to cancel the lease at any time after the three month period. Furthermore, the original term of the lease is not equal to or greater than the remaining life of the items, the Debtor is not required to renew the lease for the remaining economic life of the goods, the Debtor does not have the option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal consideration, and the Debtor does not have the option to purchase the goods at the end of the initial period for no additional consideration or nominal consideration. The Agreement therefore fails the analysis for a security agreement under § 11–1–201(37)(a)–(d).

All of the facts and circumstances surrounding the instant Agreement demonstrate that it constitutes a true lease subject to the requirements of § 365. Under § 365(d)(2), the Debtor must either assume or reject the lease prior to confirmation of the Chapter 13 plan.

It is therefore ORDERED that Rentronics' motion to require assumption or rejection is GRANTED, and the Debtor is ordered to

nal additional consideration upon compliance with the lease agreement; or

(d) The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

(2) A transaction does not create a security interest merely because it provides that:

(a) The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into;

(b) The lessee assumes the risk of loss of the goods, or agrees to pay taxes, insurance, filing, or registration fees, or service or maintenance costs with respect to the goods;

(c) The lessee has an option to renew the lease or become the owner of the goods;

(d) The lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed; or

(e) The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

(3) For purposes of this subsection (37):

(x) Additional consideration is not nominal if (i) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or (ii) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;

(y) "Reasonably predictable" and "Remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into; and

(z) "Present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonably at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.

assume or reject the lease and amend her plan accordingly within fourteen (14) days of entry of this Order, at which time Rentronics shall amend its proof of claim accordingly.

It is further ORDERED that if the Debtor fails to assume the lease in accordance with the requirements of § 365 within this time, Rentronics' motion for relief from the automatic stay will be granted without further hearing, and Rentronics may thereafter amend its proof of claim accordingly.