[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12088

_____

D.C. Docket No. 5:18-cv-00449-TES

In re: PAUL L. CUMBESS,

Debtor.

_____

MICROF LLC,

Plaintiff - Appellant,

versus

PAUL L. CUMBESS,
CAMILLE HOPE,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 3, 2020)

Before MARTIN, NEWSOM and JULIE CARNES, Circuit Judges.

NEWSOM, Circuit Judge:

Stripped to its bare essence, this bankruptcy appeal presents the question whether the word "trustee" means "trustee." We hold that it does.

**I**

In June 2015, Paul Cumbess began leasing an HVAC unit from Microf LLC for use at his residence. Somewhere during the ensuing two years, however, Cumbess found himself unable to meet all of his financial obligations—including the lease payments he owed to Microf—and in August 2017, he filed a Chapter 13 bankruptcy petition in the U.S. Bankruptcy Court for the Middle District of Georgia. Cumbess's Chapter 13 reorganization plan stated that his "pre-petition arrears" on the Microf lease—*i.e.*, the money he already owed on it—would be "disbursed by the [Chapter 13] trustee pro rata." (If you're already confused, don't worry, a Chapter 13 primer is just around the corner.) Importantly, Cumbess's plan also provided (1) that "[t]he lease to Microf is assumed"—which, as we'll explain, is just a fancy way of saying that Cumbess intended to continue to perform his obligations under the lease—and (2) that Cumbess would "be the disbursing agent" on the Microf lease going forward—which, effectively, meant that Cumbess intended to handle the future lease payments himself. Also importantly, however—and for reasons that will become clear it's a big "however"—the

2

Chapter 13 trustee assigned to Cumbess's case did *not* separately "assume" the Microf lease before the bankruptcy court confirmed Cumbess's plan.

Following his plan's confirmation, Cumbess consistently failed to make the required monthly payments on his Microf lease, and by July 2018, he owed Microf $1,763.95. Microf turned to the bankruptcy court for help, asking it to deem the missed payments "necessary costs and expenses of preserving the estate," and thus "administrative expenses" within the meaning of 11 U.S.C. § 503(b)(1)(A), and to authorize that they be paid with second priority under 11 U.S.C. § 507(a)(2). (Again, we'll explain this in due course, but essentially Microf asked to have its claim bumped up the creditor food chain). The Chapter 13 trustee opposed Microf's motion on the ground that the missed lease payments weren't "necessary costs and expenses of preserving the estate"—and therefore couldn't be considered administrative expenses within the meaning of § 503(b)(1)(A).

After conducting a hearing on the issue, the bankruptcy court denied Microf's motion. The court first held, contrary to Microf's assertion, that an administrative claim "d[id] not arise automatically from [Cumbess's] default" on the Microf lease. Central to the bankruptcy court's decision in that respect was 11 U.S.C. § 365(p)(1), which states that "[i]f a lease of personal property is rejected or not timely assumed by the trustee . . . the leased property is no longer property of the estate." Because the Chapter 13 trustee had not assumed the Microf lease, the

3

court reasoned, the lease was "exclu[ded] from the bankruptcy estate" by dint of § 365(p)(1).  Accordingly, the bankruptcy court held, Microf was not automatically entitled to an administrative-expense claim because there was "no reason to presume a benefit to the estate by a debtor's assumption of a lease of property explicitly determined not to be property of the estate."  Second, and separately, the bankruptcy court held that, even setting aside the lease's exclusion from the estate, Microf hadn't met its burden of proving that the lease payments were "actual, necessary costs and expenses of preserving the estate" and thus "administrative expenses" within the meaning of § 503(b)(1)(A).  In particular, the court stated that although Cumbess admitted that he had personally benefitted from the ongoing use of the HVAC unit, there was no evidence that the equipment provided "an actual, concrete benefit" to the estate.  The bankruptcy court thus denied Microf's claim, and Microf appealed to the U.S. District Court for the Middle District of Georgia.

The district court affirmed.  Like the bankruptcy court, the district court relied principally on the plain language of 11 U.S.C. § 365(p)(1).  The district court held that "the only reasonable interpretation" of § 365(p)(1) is that it "vests the trustee—not the debtor—with the sole power to obligate the bankruptcy estate on an unexpired lease in chapter 13 cases."  Thus, the district court held that because it is "undisputed in this case the [t]rustee did not timely assume [Cumbess's] HVAC lease with Microf," the HVAC unit was "excluded from the

4

bankruptcy estate on the day [Cumbess's] plan was confirmed by the bankruptcy court." Finding that Microf's administrative-expense claim "depend[ed] solely upon a finding that the HVAC unit did not exit the estate," the district court rejected it.

Microf then appealed to this Court.

## II

### A

Before we dive into the details of this case, a bit of Chapter 13 background is in order. First, let's talk mechanics. A Chapter 13 bankruptcy—sometimes called a "wage earners plan"—enables a debtor with a regular income to repay all or part of his debts, typically over a three- to five-year period. After the debtor initiates a Chapter 13 case by filing a petition, he must then—within 14 days—file a proposed plan of reorganization, which provides that he will make certain fixed payments over time. The bankruptcy court then determines whether the proposed plan conforms to the Bankruptcy Code. If it does, the court confirms the plan, which then becomes binding on the debtor, the creditors, and the Chapter 13 trustee, whose job it is to assist with the plan's administration. In a Chapter 13 proceeding, the bankruptcy estate—the pool of property from which the debtor's creditors are paid—comprises all of the debtor's legal and equitable interests in property at the time of the filing of the case, as well as those that he acquires after

5

the filing.  *See* 11 U.S.C. §§ 541, 1306(a).  Unlike in a Chapter 7 "liquidation"

proceeding, however, a Chapter 13 debtor can maintain possession of some or all

of his assets throughout the bankruptcy; the debtor's plan payments (and thus the

payments to his creditors) typically come from his future earnings.

Generally speaking, there are two types of claims in a Chapter 13 case:

secured and unsecured.  Importantly for our purposes, the Bankruptcy Code treats

different kinds of unsecured claims, well, differently.  A typical unsecured claim—

also called a "general unsecured claim"—needn't be paid in full.  The Code

requires only that creditors holding general unsecured claims receive what they

would under a Chapter 7 liquidation.  11 U.S.C. § 1325(a)(4).  The Code also

provides, though, that some unsecured claims are entitled to "priority," such that

they have to be paid in full unless the creditor agrees otherwise.  11 U.S.C.

§ 1322(a)(2).  Examples of claims entitled to priority include domestic-support

obligations, certain taxes, and—as particularly relevant here—"administrative

expenses" associated with the proceeding, including the "actual, necessary costs

and expenses of preserving the estate."  11 U.S.C. §§ 503(b)(1)(A), 507.

Now, the players.  First, of course, there's the debtor—he initiates the

Chapter 13 proceeding, proposes the reorganization plan, and (if all goes well)

makes payments in accordance with it.  Within the Chapter 13 process, the debtor's

objective is to "obtain court approval . . . of a plan that provides for the payment of

as little as possible to creditors and to emerge at the end of the process with as much property and as little debt as possible." Hon. W. Homer Drake, Jr., et al., Chapter 13 Practice and Procedure § 1:1 (2019). Then, there are the creditors—the people or entities who have claims against the debtor. Predictably, the creditors' incentives run counter to the debtor's: Their aim is to "maximize their recoveries by having the debtor pay as much as possible." *Id.* Finally, there's the trustee, who is appointed by the bankruptcy court after the debtor files a Chapter 13 petition to assist with the case's administration. The Chapter 13 trustee is a "representative of the bankruptcy estate," *id.* at § 17:1, and her "primary purpose . . . is . . . to serve the interests of all the creditors," *Hope v. Acorn Fin., Inc.*, 731 F.3d 1189, 1193 (11th Cir. 2013). Although a Chapter 13 trustee has many statutory rights and responsibilities, *see* 11 U.S.C. § 1302(b), she plays a particularly important role in connection with the debtor's plan: She must appear and be heard at any hearing regarding plan confirmation or modification, advise and assist the debtor in his performance under the plan, ensure that the debtor makes timely payments under the plan, and disburse those payments to creditors in accordance with the plan. *See* Hon. W. Homer Drake, Jr., et al., *supra*, at § 17:3.

There's one last piece of introductory ground we need to cover: executory contracts. At the time a debtor files a Chapter 13 petition, he may be subject to the ongoing benefits and burdens of an unexpired executory contract—such as, in this

case, a lease.  When this happens, the debtor has three choices going forward: he can "assume" the contract (*i.e.*, commit to performing its obligations), "reject" the contract (*i.e.*, commit to breaching its obligations), or "assign" the contract (*i.e.*, provide that a third party will perform its obligations).  11 U.S.C. § 1322(b).  Less clear, however—and the issue at the center of this appeal—is the effect that the debtor's assumption-rejection-assignment election has on the bankruptcy estate and whether, for instance, the debtor's decision to assume a lease obligates the bankruptcy estate independent of any action by the Chapter 13 trustee.

## B

With the benefit of that background, we're ready to confront the issue presented in this appeal.  Microf, again, contends that it is entitled to an administrative-expense claim on Cumbess's unpaid post-petition lease payments.  Essentially, Microf wants to re-classify the missed payments from the general unsecured-debt category to the administrative-expense category, and thereby gain the benefits of the priority provided by 11 U.S.C. § 507.

Under 11 U.S.C. § 503(b)(1)(A), administrative expenses include the "actual, necessary costs and expenses of preserving the estate."  Microf argues that when Cumbess "assumed" the HVAC lease in his Chapter 13 plan, he did so on behalf of the estate—such that the lease remained property of the estate after his Chapter 13 plan was confirmed.  And, Microf contends, because the lease

8

remained part of the estate, the post-petition lease payments are automatically "actual, necessary costs and expenses of preserving the estate" within the meaning of § 503(b)(1)(A). The bankruptcy court and the district court both disagreed, finding it dispositive that because the *trustee* never "assumed" the lease in accordance with 11 U.S.C. § 365(p)(1), the Microf lease dropped out of the estate upon confirmation of Cumbess's Chapter 13 plan.[1]

* * *

To assess the lower courts' decisions—and in particular their reliance on § 365(p)(1)—we need to back up just a bit. Under 11 U.S.C. § 1322(b)(7), a Chapter 13 debtor's repayment plan "may . . . subject to section 365 . . . provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." Section 1322(b)(7) tells us little more than what we already know: that the debtor can assume an unexpired lease—"subject," anyway, to § 365. The real question here is whether by assuming the lease as part of his Chapter 13 plan, the debtor can—singlehandedly and, in particular, without any action by the trustee—obligate the bankruptcy estate. Section 1322(b)(7) doesn't answer that question. What, then, about the provision to which § 1322(b)(7) points, § 365?

---

[1] "[W]e examine the bankruptcy court's order independently of the district court." *In re Int'l Pharm. & Disc. II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005). In doing so, we review the bankruptcy court's legal conclusions de novo and its factual findings for clear error. *Id.*

9

Section 365's very first subsection demonstrates that the trustee plays an important role in the assumption of unexpired leases: it states that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). And a provision that follows shortly thereafter, § 365(d)(2) likewise explains that—

> In a case under [Chapter 13] the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

So under § 1322(b)(7), the debtor can "provide for the assumption" of a lease in his proposed Chapter 13 plan—again, at least "subject to" § 365. And under § 365(a) and (d)(2), the trustee can "assume" a lease as well.

So much for the "who"—both the debtor and the trustee have authority to assume an unexpired lease. Now for the "to what effect." Enter § 365(p)(1), which speaks directly—and we think conclusively—to the question that we face in this appeal. In relevant part, that provision states that "[i]f a lease of personal property is rejected or not timely assumed by the trustee . . . the leased property is no longer property of the estate." *Id.* at § 365(p)(1). Section 365(p)(1)'s plain language answers the question that we are principally tasked with deciding: Where (as here) the trustee does not assume an unexpired lease, it drops out of the estate.

Done and done.

10

Not so fast, says Microf.  To combat § 365(p)'s seemingly unambiguous text, Microf raises three arguments.  In the end, though, none of them warrants ignoring what the Bankruptcy Code so clearly says.

**1**

Microf initially argues that "within the context of § 365," the term "trustee" should be (and has been) understood "to refer to the Chapter 13 debtor and plan." Br. of Appellant at 13.  In other words—and as Microf explicitly stated at oral argument—"trustee," at least in these circumstances, doesn't mean "trustee" at all—it means "debtor."  Oral Argument at 6:40–6:50.  We reject Microf's countertextual position for several reasons.

First, and most obviously, accepting Microf's argument would require us to excise the word that Congress used—"trustee"—and replace it with an altogether different word—"debtor."  That, it should go without saying, we cannot do.  *See Dean v. United States*, 556 U.S. 568, 572 (2009) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face." (quotation omitted)); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93–94 (2012) (stating that the "judicial power" should not be used "to supply words . . . that have been omitted").

Second, and relatedly, the term that § 365(p)(1) uses—"trustee"—and the term that it omits—"debtor"—are well understood in bankruptcy law, and they are

11

well understood to refer to different people (or entities, as the case may be).  As we have explained, the trustee and the debtor are two of the central players in a Chapter 13 case, and they each have their own unique roles, interests, and responsibilities.  Accordingly, it seems to us exceedingly unlikely that Congress would have used the term "trustee" in § 365(p)(1) to mean "debtor."  And that is all the more true given that eleven of § 365's sixteen subsections use the terms simultaneously—and thus clearly to refer to different people (or again, entities).  *See, e.g.*, 11 U.S.C. § 365(a)–(f), (h)–(i), (n)–(p).[2]

Third, other provisions of the Bankruptcy Code confirm that reading "trustee" to mean "debtor" in § 365(p)(1) wouldn't make sense.  Under the whole-text canon, courts should "'consider the entire text [of a statute], in view of its structure and of the physical and logical relation of its many parts,' when interpreting any particular part of the text."  *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1192 (11th Cir. 2019) (quoting Scalia & Garner, *supra*, at 167).  This means that, "typically . . . only one of the possible meanings that a word or phrase can bear is compatible with use of the same word or phrase elsewhere in the statute."  *Id.* (quoting Scalia & Garner, *supra*, at 168).  Tellingly, Microf hasn't pointed to *any* provision of the Bankruptcy Code outside § 365 in which it claims

---

[2] The surest proof, it seems to us, that two people are not the same is that they've been seen in the same room(s) together.

Congress used the word "trustee" to mean "debtor," or vice versa.  Microf appears to concede, therefore, that elsewhere in the statute those words mean exactly what they say—a concession that substantially undermines its argument that "trustee" bears some idiosyncratic, sui generis meaning in § 365(p)(1).  *Cf. Hall v. United States*, 566 U.S. 506, 519 (2012) ("At bottom, identical words and phrases within the same statute should normally be given the same meaning." (quotation omitted)).

Finally, a capper: 11 U.S.C. § 1303 provides that "the debtor shall have, exclusive of the trustee, the powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title."  This provision of the Bankruptcy Code is doubly devastating to Microf's position.  For one thing, it shows (once again) that Congress appreciates the important distinction between the "trustee" and the "debtor"—and that it doesn't use one of those terms to signify the other.  And second, it makes clear that there are a few specific provisions in which Congress intended the debtor to have powers assigned to the trustee—and, significantly, that § 365(p)(1) is *not* one of them.  *Expresio unius est exclusio alterius.  See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (holding that, "when the items expressed are members of an associated group or series," the *expresio unius* canon

13

"justif[ies] the inference that items not mentioned were excluded by choice, not inadvertence" (quotation omitted)).[3]

To summarize, then, as a matter of interpretation, there is simply no way around the fact that when § 365(p)(1) refers to the "trustee," it means the trustee—and, accordingly, that if the *trustee* does not assume an unexpired lease, it drops out of the debtor's bankruptcy estate.

**2**

Even so, Microf contends that interpreting the word "trustee" in § 365(p)(1) to mean "trustee" will "actively thwart" Congress's intent. Br. of Appellant at 15. For support, Microf points to 11 U.S.C. § 365(p)(3), which states that "in a case under chapter 13, if the debtor is the lessee with respect to personal property and the lease is not assumed in the plan confirmed by the court, the lease is deemed rejected as of the conclusion of the hearing on confirmation." From that, Microf argues that the inverse "logically follows"—*i.e.*, that "if the lease *is* assumed in the confirmed plan, the lease is *not* rejected and the stay is *not* automatically terminated." Br. of Appellant at 16 (emphasis added). In other words, so long as

---

[3] Citing to cases like *In re Michalek*, 393 B.R. 642 (Bankr. E.D. Wis. 2008), Microf argues that "the same principles of liability for assumed lease defaults [should be] applied in Chapter 13 as in Chapter 11." Br. of Appellant at 12 n.33. We disagree. Section 1303—which addresses the "[r]ights and powers of [the] debtor" in a Chapter 13 case—is subtly, but importantly, different from § 1107(a)—which addresses the "rights . . . of a debtor in possession" in a Chapter 11 case. Under § 1107, Chapter 11 debtors are generally given "all the rights . . . of [the Chapter 11] trustee," subject to only a few exceptions. As explained in text, § 1303 is stingier: It gives the Chapter 13 debtor the trustee's authority only in a few, carefully delineated instances.

the lease is assumed in the plan, it remains part of the estate. We disagree for at least three reasons.

First, and most fundamentally, to the extent that Microf asserts that an unarticulated "inten[t]" can prevail over a statute's enacted text, it is just wrong. Following the Supreme Court, we have consistently held that the enacted text is the best (and often the only relevant) indication of legislative intent. *See, e.g.*, *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1336 (11th Cir. 2005) ("[U]pon 'find[ing] the terms of a statute unambiguous, judicial inquiry is complete.'" (quoting *Burlington N. R.R. Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461 (1987))); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

Second, and in any event, Microf's logic is faulty. Not only does Microf's conclusion not "logically follow" from the text of § 365(p)(3), there's actually a name for the logical trap-door through which Microf has fallen—it's called the fallacy of "denying the antecedent," and it refers to "the incorrect assumption that if P implies Q then not-P implies not-Q," *NLRB v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring). Section 365(p)(3) simply states that, in the event a lease is not assumed in the debtor's plan, the lease is deemed rejected. Contrary to Microf's assertion, the provision says nothing—one way or the other—

15

about what happens in the event that the debtor *does* assume the lease in his plan. Assumption in the plan, therefore, is a necessary condition to the lease remaining in the estate, but it is not alone sufficient.

Finally, a closer look at § 365(p)(3)—and its relation to § 365(p)(1)—confirms that even aside from its atextualism, Microf's trustee-doesn't-mean-trustee interpretation of § 365(p)(1) can't be right.  According to Microf, § 365(p)(1) says that if the debtor (remember, Microf insists that "trustee" means the debtor) doesn't timely assume the lease, the lease is deemed rejected; and then § 365(p)(3) just goes on to repeat the exact same thing—that if the debtor doesn't timely assume the lease, the lease is rejected.  We decline to accept such a strained—and needlessly repetitive—interpretation.  *See In re Shek*, 947 F.3d 770, 778 (11th Cir. 2020) ("Th[e] surplusage canon obliges us, whenever possible, to disfavor an interpretation when that interpretation would render a 'clause, sentence, or word . . . superfluous, void, or insignificant.'" (quoting *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)).  It makes much more sense—and gives meaning to each of the words that Congress used—to interpret § 365(p)(1) as addressing the trustee's (as in the *trustee's*) authority to assume a lease on behalf of the estate and § 365(p)(3) as addressing the debtor's ability to assume the lease on behalf of

16

himself.[4] *See In re Ruiz*, 2012 WL 5305741 at *3 n.5 (Bankr. S.D. Fla., Feb. 15, 2012) ("[T]he only logical interpretation of section 365(p)(1) and section 365(p)(3) is that the chapter 13 debtor has a right to assume an executory contract separate from the estate's rights and obligations—similar to reaffirmation in chapter 7.").

### 3

Lastly, Microf argues consequences—in particular, it says that interpreting "trustee" to mean "trustee" in § 365(p) will create a "seismic shift" in bankruptcy law. Br. of Appellant at 9. Relying on the principle that courts "will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure," *Cohen v. De La Cruz*, 523 U.S. 213, 221 (1998) (quotation omitted), Microf argues that if Congress had intended § 365(p)(1) to depart from what it calls the "decades of Chapter 13 practice and case law" permitting debtors to obligate the estate through their assumption of an unexpired lease, it would have done so more explicitly. Br. of Appellant at 7. In the same vein, Microf also asserts that a plain-text interpretation will "wreak

---

[4] Microf opposes this reading by pointing to § 365(p)(2)—which provides for personal lease assumption on behalf of a debtor in a Chapter 7 case—and arguing that if Congress had meant to provide for personal lease assumption in Chapter 13 cases, it would have done so through language similar to that found in § 365(p)(2). Again, we disagree. Unlike a Chapter 13 bankruptcy, a Chapter 7 bankruptcy doesn't involve a bankruptcy plan. So if Congress wanted (as we think it did) to allow a Chapter 13 debtor to personally assume a lease *through his bankruptcy plan*, it would make sense (as we think it does) for the Chapter 13 personal-lease-assumption provision's phrasing to diverge from § 365(p)(2)'s.

17

procedural havoc" in Chapter 13 cases.  Br. of Appellant at 17.  Again, we are unconvinced.

First off, we reject Microf's baseline premise that reading § 365(p)(1) in accordance with its plain language effects a "fundamental change" in Chapter 13 practice.  Br. of Appellant at 29.  Based on our review, few federal courts—and no courts of appeals—have been asked to interpret § 365(p)(1) directly.[5]  And the scant precedent Microf cites in support of its interpretation of § 365(p)(1) is hardly definitive: The decisions on which it relies aren't directly applicable, don't bind us, and contravene other (equally non-binding) caselaw[6]—hardly the stuff of which well-established bankruptcy practice is made.  To be fair, as Microf points out, some commentators appear to agree with its contention that a Chapter 13 debtor

---

[5] As Microf notes, a number of courts have tackled the big-picture question we face here—whether a debtor can obligate the estate through the Chapter 13 plan alone—without considering the effect of § 365(p)(1).  We think that Microf is wrong, however, to suggest (Br. of Appellant at 22) that those courts' decisions can be characterized as "consistent[]."  *Compare, e.g.*, *In re Parmenter*, 527 F.3d 606, 610 (6th Cir. 2008) ("Whereas a Chapter 11 debtor-in-possession acts on behalf of the estate when it assumes a lease and thus creates a legal obligation on the estate, a Chapter 13 debtor who assumes and pays for a lease outside of the plan does not." (citation omitted)), *with, e.g.*, *In re Wells*, 378 B.R. 557, 561 (Bankr. S.D. Ohio 2007) ("Even if a [Chapter 13] plan requires a debtor to make direct payments to a lessor outside the plan, the assumption of the lease obligates the estate as a guarantor.").

[6] Microf cites *In re Jack*, 579 B.R. 627, 629–30 (Bankr. M.D. Fla. 2017), and *In re Johnson*, 203 B.R. 498, 503 (Bankr. S.D. Ga. 1996), both of which suggest that a Chapter 13 *debtor* can satisfy the requirements of § 365(d)—which, like the text of § 365(p)(1) appears to apply only to the "trustee."  Compare those cases, however—which, because they don't interpret § 365(p)(1), provide only indirect support for Microf's interpretation—with *In re Ruiz*, 2012 WL 5305741 at *3 (Bankr. S.D. Fla. Feb. 15, 2012), which rejects Microf's § 365(p)(1) interpretation head-on. *See id.* ("Section 365(p) . . . clearly distinguishes between assumption by the trustee on behalf of the estate and assumption by the debtor.  In this case, since the chapter 13 trustee did not assume the . . . [l]ease, it ceased to be property of the estate under section 365(p)(1).").

18

has the power, on his own, to assume a lease on behalf of the bankruptcy estate. *See, e.g.*, Collier on Bankruptcy ¶ 1322.11 (Richard Levin & Henry J. Sommer eds., 16th ed. 2020) ("Ordinarily, the chapter 13 debtor exercises the estate's power to assume or reject a lease through a provision in the chapter 13 plan, which only a debtor may file."). Others, though, recognize the interpretation that we adopt here. *See* Chapter 13 Practice and Procedure, *supra*, at § 6:10 (stating that under one view of § 365, even "[i]f a Chapter 13 debtor assumes a lease . . . it is no longer property of the estate" as long as "the trustee has not assumed it"). At the very least, most commentators agree that the issue—As between the debtor and the trustee, who has the authority to obligate the bankruptcy estate by assuming a lease?—is unresolved. *See* 7 Norton Bankruptcy Law & Practice (3d ed.) § 149:12 (stating that, when it comes to lease assumption, the roles played by the debtor and the trustee are "still somewhat confused" and that "[i]t is not clear whether Congress intended both the Chapter 13 trustee and the Chapter 13 debtor to independently possess the assumption, rejection, or assignment powers described in Code § 365."). We are confident, therefore, that bankruptcy law and practice— at least insofar as debtors, trustees, and lease assumption are concerned—are far less settled than Microf claims and, accordingly, that the clear-statement-like canon that it invokes is irrelevant.

19

We hasten to add, though, that even if Microf were right about the state of the law—and that, prior to § 365(p)'s enactment in 2005, courts had consistently held that the debtor has the independent power to assume an unexpired lease on behalf of the bankruptcy estate—it wouldn't change our decision.  It's certainly true that courts are reticent to disrupt the established bankruptcy landscape without clear evidence of congressional intent to do so.  *See Hall*, 566 U.S. at 518.  But it's hard for us to imagine a clearer directive than the one Congress provided in § 365(p)(1).  Even assuming it once existed, the principle of bankruptcy law that Microf touts—that a Chapter 13 debtor can unilaterally obligate his bankruptcy estate by assuming an unexpired lease in his plan—was upended, and is now foreclosed, by § 365(p)(1), which states unambiguously that "[i]f a lease of personal property is . . . not timely assumed by the trustee . . . the leased property is no longer property of the estate."  If a clear statement was necessary, § 365(p)(1), it seems to us, provides it.

We also reject Microf's related assertion that interpreting "trustee" in § 365(p)(1) to mean "trustee" will "wreak procedural havoc" in Chapter 13 cases "by necessitating the needless filing of thousands upon thousands of motions each year."  Br. of Appellant at 8.  Essentially, Microf contends that reading § 365(p)(1) to mean what it says will "require[] that the trustee file a motion prior to plan confirmation every time that the bankruptcy estate assumes a lease"—a

20

requirement, it says, that will cause "judicial waste and a lack of clarity as to the rights of the parties." *Id.* at 17. We disagree.

As an initial matter, it's not at all clear that the filings to which Microf objects would be "needless." Whether an assumed, unexpired lease obligates the bankruptcy estate is a big deal—not just for the lessor seeking overdue post-petition lease payments, but also for the other creditors, whose claims the lessor is trying to leapfrog. *See In re Parmenter*, 527 F.3d 606, 608 (6th Cir. 2008). We think it makes good sense to require the trustee—the representative of the Chapter 13 estate, as well as *all* creditors—to affirmatively assume an unexpired lease as a precondition to obligating the estate, especially given that the bankruptcy court is under no obligation to scrutinize the wisdom of a debtor's decision to assume an unexpired lease. *See In re Rosenhouse*, 453 B.R. 50, 56 (Bankr. E.D.N.Y. 2011) ("Unlike in a chapter 11 case, the Bankruptcy Code and Rules do not establish any requirement that the court approve a chapter 13 debtor's assumption of a personal property lease as being in the best interests of creditors or the bankruptcy estate, or even as a proper exercise by the debtor of his or her business judgment."); *see also In re Juvennelliano*, 464 B.R. 651, 654 (Bankr. D. Del. 2011) (noting that, because "[t]he assumption of an unexpired lease under chapter 13 is typically not subject to the same level of scrutiny as in a chapter 11 case . . . it is perhaps less appropriate

21

to burden the creditors of a chapter 13 debtor with the economic consequences of an improvident lease assumption").

But even if it *didn't* make good sense to us—even if we thought it inefficient to require a Chapter 13 trustee to affirmatively assume an unexpired lease as a precondition to obligating the estate—it wouldn't much matter.  In the end, our job isn't to decide which reading of § 365(p)(1) produces the best bankruptcy-law system; rather, our job is to determine what the text of § 365(p)(1) requires.  *See Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938, 1946 (2016) ("The plain text of the Bankruptcy Code begins and ends our analysis.").

\*   \*   \*

It is of course possible the Microf is right, and that when Congress drafted 11 U.S.C. § 365(p)(1) it just whiffed—it said "trustee" when what it really meant was "debtor."  That possibility, though, cannot control our disposition.  *See CRI-Leslie v. Comm'r of Internal Revenue*, 882 F.3d 1026, 1033 (11th Cir. 2018) ("Perhaps . . . Congress just stubbed its toe between the hearing room and the House and Senate floors.  Even so, it's not our place or prerogative to bandage the resulting wound.").  For both formal and practical reasons, which occasionally bear repeating—perhaps particularly in a case like this—our loyalty must lie with the text that Congress enacted.  As a formal matter, it is only the enacted text that was introduced, agreed to, and passed by both houses of Congress and then presented to

22

and signed by the President in accordance with the Constitution.  *See* U.S. Const. art. I, § 7.  As a practical matter, hewing closely to the enacted text serves multiple important (and complimentary) interests: (1) it gives the citizenry clear notice of what the law requires; (2) it requires Congress to exercise caution when drafting statutes; and (3) it ensures that courts adhere to their designated—and limited—role.

## III

The language of 11 U.S.C. § 365(p)(1) is crystal clear: "If a lease of personal property is rejected or not timely assumed by the trustee . . . the leased property is no longer property of the estate."  That provision means what it says, and so here—where it's undisputed that the trustee did *not* assume the Microf lease—it means that the Microf lease dropped out of the bankruptcy estate upon confirmation of Cumbess's Chapter 13 plan.  Accordingly, and because Microf has not otherwise shown that the lease confers a benefit on the estate,[7] its claim for administrative-expense priority was properly denied.

**AFFIRMED.**

---

[7] There is one loose end: Microf seems to assume that its claim turns entirely on the estate-asset issue—*i.e.*, whether the lease remained in the estate after confirmation of Cumbess's Chapter 13 plan.  Indeed, Microf doesn't offer any argument why, even if the lease dropped out of the estate after confirmation, it might *still* be entitled to an administrative-expense claim.  *See* Br. of Appellant at 9, 19, 27.  Microf seems to concede, therefore, that if it loses on the estate-asset issue (which we've held it does), its claim fails.